UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                Case No. 805-84105-511

R.F. CUNNINGHAM & CO., INC.,

                                Chapter 11

                Debtor.
----------------------------------------------------------------x


**MEMORANDUM DECISION**
**(Re: Motion for Relief from the Automatic Stay)**


APPEARANCES:


*Counsel for Champaign Landmark, Inc.*
Jeffrey Herzberg, Esq.
Zinker & Herzberg, LLP
278 East Main Street
Suite C
PO Box 866
Smithtown, NY 11787-0866


*Counsel for the Debtor*
Michael S. Amato, Esq.
Ruskin Moscou Faltisckek PC
East Tower, 15th Floor
1425 EAB Plaza
Uniondale, NY 11556--1425


*Counsel for the Official Committee of Unsecured Creditors*
Alan D. Halperin, Esq.
Halperin Battaglia Raicht, LLP
555 Madison Avenue
New York, NY 10022


*Counsel for Agland Grain, Inc., Fulton-Marshall Co-Op and Stockland Grain Co.*
David C. Barrett, Jr.
Barrett, Easterday, Cunningham & Eselgroth LLP
7269 Sawmill Road, Suite 100
Dublin, Ohio 43016


HON. MELANIE L. CYGANOWSKI, United States Chief Bankruptcy Judge:

At a hearing held on September 29, 2005, this Court heard and determined a motion by Champaign Landmark by which it sought relief from the automatic stay pursuant to 11 U.S.C. § 362(d) for the purpose of enforcing an Ohio statutory lien that encumbered certain agricultural commodity assets of the debtor, R.F. Cunningham and Company (the "Debtor").  The motion was denied.  At the request of the parties, the Court issues this Memorandum Decision which reflects the oral decision rendered at the time of the hearing.

**BACKGROUND OF THE PROCEEDINGS**

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), on June 13, 2005, and has been acting as a debtor in possession since that time.  According to the Debtor's petition, it is a New York corporation licensed to transact in sales of grain commodities in the State of New York.  The movant, Champaign Landmark, Inc., is a cooperative of grain farmers located in the State of Ohio.  Champaign Landmark did business with the Debtor prepetition, selling it grains for pick-up within the boundaries of Ohio.

The Debtor, on its petition, indicated that Champaign Landmark was owed approximately $140,000 for grains picked up in Ohio for resale.  Champaign Landmark disputes the sum, and argues its records show the sum owing from the Debtor to be approximately $150,000.

Champaign Landmark relies on the statutory scheme of the State of Ohio as the basis for relief from the stay.  It contends that Chapter 926 of Ohio's Revised Code Annotated ("ORCA")

applies to the situation at hand.  Ohio Rev. Code Ann. § 926 (West 2005).  Specifically, Champaign

Landmark contends that by virtue of ORCA § 926.021, there is a statutory lien that attaches to the

grain sold to the Debtor and that as a consequence, Champaign Landmark should be permitted to

have the automatic stay lifted to allow it to enforce its lien against the Debtor.   Champaign

Landmark argues that it is not adequately protected in any fashion and that the Debtor has no equity

in the grain deposits until the same are resold and payment is made to Champaign Landmark.

Opposing the motion for relief from the stay is the Debtor, the Committee of

Unsecured Creditors and Agland Grain, Inc., a creditor of the Debtor.  Among the arguments offered

is that by the Debtor which urges that Ohio law does not apply in the first instance because the

contract between Champaign Landmark and the Debtor, entered into in New York, provides, in

substance, that it is New York law that controls the parties' rights under the agreement.

The Debtor further argues that even if Ohio law applies, any lien arising under the

statutory scheme of ORCA § 926.021 must be avoided pursuant to 11 U.S.C. § 544, because it is in

effect a "secret lien," creating a priority secured claim in derogation and in detrimental harm to the

rights of other creditors, all of which is in violation of the statutory priority scheme of the

Bankruptcy Code.  This argument is based on the proposition that the statutory lien that arises

pursuant to ORCA § 926.021 extends beyond the grain sold by Champaign Landmark to the Debtor.

The Debtor points out that the definition of "agricultural commodity assets" (the collateral to which

the lien purportedly attaches) is found in ORCA § 926.021(A)(3).  That section provides that

"agricultural commodity assets" include the agricultural commodities owned or stored, redeposited

agricultural commodities, proceeds from the sale of the agricultural commodities due or to become due, any other unencumbered funds, property or equity in funds or property wherever located that can be directly traced to the sale of agricultural commodities by the handler, and any other unencumbered funds, property or equity in assets.  Because ORCA § 926.021(B) provides that a lien shall exist on all of the Debtor's agricultural commodity assets, the Debtor argues this lien, if held to apply, would attach to all assets of the Debtor, wherever located, and thus would be a secret lien as the term has been utilized in other cases.  *See, e.g., In re Canney*, 284 F.3d 362 (2d Cir. 2002).

The Debtor also argues that Champaign Landmark, in any event, does not have standing to assert the lien rights under Ohio law.  Subsection (D) of ORCA § 926.021 provides that it is the Director of Agriculture who has exclusive authority to enforce the lien claims that arise by virtue of the statute.

The Committee of Unsecured Creditors joins in the Debtor's arguments, and also argues that it is black letter law that state statutory schemes, such as ORCA § 926.021, cannot be applied to property outside of the state, and that the doctrine prohibiting such extraterritorial application limits the reach of the Ohio statute.  The Committee argues, therefore, that because the Debtor has no assets in the State of Ohio, the statutory lien cannot reach the assets of the Debtor.

Champaign Landmark argues in reply that the mere fact that Champaign Landmark agreed to the New York choice of law provision is of no moment given that the lien is held by the Department of Agriculture and the Department was not a signatory to the contract.  With respect to

the extraterritorial application of the statute, Champaign Landmark argues that the lien follows the

grain and that even if the Court were to hold it inappropriate to have extraterritorial application

beyond the borders of Ohio, the decision of *In re Eddingfield*, 67 B.R. 1000 (Bankr. C.D. Ill. 1986),

supports the notion that this Court should give comity and recognize the lien of the sister state.

## DISCUSSION

11 U.S.C. § 362(d) governs motions for relief from the stay. That section provides,

to the extent relevant:

>   (d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
>   (1)     for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
>   (2)     with respect to a stay of an act against property under subsection (a) of this section, if-
>
>   (A)     the debtor does not have an equity in such property; and
>
>   (B)     such property is not necessary to an effective reorganization ....

11 U.S.C. §362(d) (2000).

The Court has broad discretion to lift the stay. *See, e.g., Capital Communications

Federal Credit Union v. Boodrow*, 197 B.R. 409, 412-13 (N.D.N.Y. 1996), *aff'd*, 126 F.3d 43 (2d

Cir. 1997), *cert. denied,* 522 U.S. 1117 (1998) ("Since cause is not defined in the Code, a court has

broad discretion to lift the stay in 'appropriate circumstances'") (citation omitted). With respect to

relief for "cause," however, it is the movant who must make an initial showing of cause before any

burden shifts to the debtor; absent such showing, relief from the stay will be denied. *See In re*

*Mazzeo,* 167 F.3d 139, 142 (2d Cir. 1999).  The determination of whether to lift or modify the stay

ultimately turns on the facts of each given motion.  *See, e.g., In re Bogdanovich*, 292 F.3d 104, 110

(2d Cir. 2002).  In general, before relief will be granted, there must be a showing of harm to the

secured creditor caused by the continuation of the stay.  *Boodrow*, *supra*, 197 B.R. at 413.  There

is no statutory requirement that unsecured creditors receive adequate protection, and the lack of

adequate protection does not entitle an unsecured creditor to relief from the stay.  *See In re Aquarius*

*Disk Services, Inc.*, 254 B.R. 253, 260 (Bankr. N.D. Cal. 2000).   Only in extraordinary

circumstances will an unsecured creditor be granted relief from the stay.  *See, e.g., In re Leibowitz*,

147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992) (citing *Sonnax Industries, Inc. v. Tri Component*

*Products Corp.*, 99 B.R. 591, 595 (Bankr. D. Vt. 1989), *aff'd*, 907 F.2d 1280 (2d Cir. 1990)); *In re*

*Burack, Inc.*, 132 B.R. 814, 817 (Bankr. S.D.N.Y. 1991); *In re Pioneer Commercial Funding Corp.*,

114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990)).  The general principle is that "unsecured claims should

not be granted relief from the stay because to do so would result in a violation of one of the

fundamental concepts of bankruptcy law; that there should be an equality of distribution among

creditors."  *Liebowitz*, 147 B.R. at 345.


To the extent Champaign Landmark is requesting relief from the stay in order to

enforce a statutory lien, it is a threshold question for the Court whether Champaign Landmark does

indeed hold an enforceable lien against the Debtor's assets.

**STATUTORY FRAMEWORK**

We begin with a review of the Ohio statutory framework to better understand the

issues presented in this case.  Subsection (B) of ORCA § 926.021 states:

(B) A lien shall exist on all *agricultural commodity assets* of an *agricultural commodity handler* in favor of any of the following:

(1)    Claimants, including lenders, who possess receipts covering grain owned or stored by the handler;

(2)    Claimants who possess written evidence of ownership other than a receipt disclosing a storage obligation of the handler, including tickets;

(3)    Claimants who surrendered receipts as part of an agricultural commodity sales transaction but were not paid fully for the agricultural commodity and the handler failed within twenty-one days after the surrender;

(4)    Claimants who possess any other written evidence of the sale of agricultural commodities to the handler for which they were not paid fully, including the sale of agricultural commodities for a nominal sum under a feed agreement.

(emphasis added).

In turn, Section 926.021(A)(3) of the ORCA defines "agricultural commodity assets"

as:

(a)    All agricultural commodities owned or stored, including agricultural commodities in transit shipped by the handler but not yet paid for;

(b)    Redeposited agricultural commodities;
(c)    Proceeds from the sale of agricultural commodities due or to become due;

(d)    The equity less any secured financing directly associated therewith in assets in hedging or speculative margin accounts held by commodity or security exchanges or dealers representing the exchanges, and any moneys due or to become due less any secured financing directly associated therewith from any transactions on the exchanges;

(e)     Any other unencumbered funds, property, or equity in funds or property, wherever located, that can be directly traced to the sale of agricultural commodities by the handler, provided both that the funds, property, or equity in funds or property shall not be considered to be encumbered unless the encumbrance results from good and valuable considerations advanced by any secured party on a good faith basis and that the encumbrance is not the result of the taking of funds, property, or equity in funds or property as additional collateral for an antecedent debt;

(f)     Any other unencumbered funds, property, or equity in assets.

The terms "agricultural commodity handler" and "handler" are defined by ORCA § 926.01(C) to mean, "any person who is engaged in the business of agricultural commodity handling." This in turn requires reference to ORCA § 926.01(B), which states:

(B)     "Agricultural commodity handling" or "handling" means any of the following:

(1)     Engaging in or participating in the business of purchasing from producers agricultural commodities for any use in excess of thirty thousand bushels annually;

(2)     Operating a warehouse as a bailee for the receiving, storing, shipping, or conditioning of an agricultural commodity;

(3)     Receiving into a warehouse an agricultural commodity purchased under a delayed price agreement;

(4)     Providing marketing functions, including storage, delayed price marketing, deferred payment, feed agreements, or any other marketing transaction whereby control is exerted over the monetary proceeds of a producer's agricultural commodities by a person other than the producer.

A "claimant" is defined by ORCA § 926.021(A)(1) to mean, as used in that section, "a person to whom an agricultural commodity handler owes a financial obligation for agricultural commodities

or the actual monetary proceeds from agricultural commodities that have been delivered to the

handler."

The mechanics of the lien are outlined by ORCA § 926.021(C), which states:

> The lien that shall secure all claims described in division (D) of this section, shall arise, attach to the agricultural commodity assets of an agricultural commodity handler, and become effective at the time of delivery of the agricultural commodity for sale or for storage under a bailment agreement, commencement of the storage obligation, or when funds are advanced by the lender, and shall terminate when the liability of the agricultural commodity handler to the claimant is discharged, provided that the priority of each lien among the respective claimants shall not relate to the date the claim arises but shall be governed by the priorities established in division (D) of this section. *In the event of a failure, the lien claims of all claimants shall be considered to be assigned by operation of this section to the department of agriculture, and in the event of a failure and subsequent liquidation, the lien shall transfer over to assets or proceeds of assets either received or liquidated by the department.*

ORCA § 926.021(C) (emphasis added). "Failure," as used in the statutory language, is a defined

term meaning, for the purposes of this case, "an inability to satisfy claimants financially," and is

essentially a trigger for certain elements of the statute. *See* ORCA § 926.021(A)(2). The

enforcement authority is then vested with the Director of Agriculture by ORCA § 926.021(D), which

states, "Except as provided in division (E) of this section, in the event of a failure, the director of

agriculture shall possess exclusive authority to enforce the lien claims and allocate the proceeds ...."

Exception is provided by ORCA § 926.021(E):

> In the event that any adversary proceeding is commenced to recover agricultural commodity assets upon which the lien imposed in this section is imposed and the department declines to enter the proceeding, the director, upon application to the director by any claimant, shall assign to the claimant the applicable lien to permit the claimant to pursue the claimant's lien in the adversary proceeding to the extent the action will not delay the resolution of the proceeding, the prompt liquidation of the assets, or the ultimate distribution of the assets to all claimants.

These statutory passages are at the center of the dispute between the parties in this case. The Court is thus called upon to interpret and apply this law, drafted by a legislature with a unique and specialized understanding of the agricultural industry of Ohio.

**STANDING TO ENFORCE THE LIEN**

The Ohio statute provides by its terms that the Director of Agriculture possesses the exclusive authority to enforce the lien claims. ORCA § 926.021(D) states, that upon a failure, "the director of agriculture shall possess exclusive authority to enforce the lien claims." ORCA § 926.021(E) provides an exception, however, for situations where the Director assigns the right to enforce the lien to a party who requests such assignment. Champaign Landmark argues that by reason of a letter provided to it, the State of Ohio has assigned to it the right to enforce the lien. This letter is dated July 28, 2005, and was written by the Assistant Attorney General for the Ohio Department of Agriculture. It reads in pertinent part:

> I understand that your client, Champaign Landmark, is asserting a claim against the bankruptcy estate of R.F. Cunningham & Co. ("R. F. Cunningham") for amounts due from the sale of agricultural commodities. You have advised me that your client is asserting that a lien exists against certain assets of R.F. Cunningham pursuant to R.C. 926.021(B).
>
> The Ohio Department of Agriculture ("ODA") has not made a determination that such a lien is in existence against the assets of R.F. Cunningham. Accordingly, ODA declines to intervene in the R.F. Cunningham bankruptcy matter, and does not assert that it has any exclusive authority to assert such a lien against R. F. Cunningham. ODA has no objection to any effort by Champaign Landmark to assert a lien against any assets of R. F. Cunningham.

The issue presented is whether the letter is indeed an "assignment" in words and effect, particularly given that an "adversary proceeding" has not yet been commenced. Although the word "assignment" is not expressly used in the letter, the Court finds that the intent of the letter was to assign to Champaign Landmark whatever lien enforcement rights existed under the statute. Moreover, for the purpose of this decision (both now and with respect to the Court's conclusions as to whether or not a lien exists and may be avoided under 11 U.S.C. § 544), the Court believes that it is not necessary that an "adversary proceeding" be commenced. More specifically, the Court does not believe the Ohio legislature intended their use of the phrase "adversary proceeding" in the statute to necessarily have the same meaning ascribed to it by the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, which require that certain actions be adjudicated within the context of an "adversary proceeding." Fed. R. Bankr. Pro. 7001. In a bankruptcy setting, the Ohio statute could be read more fairly to mean "adversarial proceeding," rather than "adversary proceeding," which is a bankruptcy term of art.

Here, the Court believes that it would elevate form over substance not to deal with the merits of the issue that has been presented to this Court by the claimant, Champaign Landmark, that chose to bring a motion before this Court in lieu of an adversary proceeding. The Court does not believe the rights of the affected parties, be they the Debtor or Champaign Landmark, have not been adequately represented or suffer any prejudice or adverse effect by reason of having the Court render its decision in the context of a contested proceeding pursuant to Fed. R. Bankr. Proc. 9014

in lieu of requiring an adversary proceeding to be commenced pursuant to Fed. R. Bankr. Proc. 7001(2).[1]

The Court concludes that, to the extent it is necessary to address the issue of whether Champaign Landmark has standing to enforce the lien created by ORCA § 926.021,  Champaign Landmark has received the requisite assignment from the Director of Agriculture.

**AVOIDABILITY UNDER THE STRONG ARM PROVISION**

After hearing oral argument, reviewing the briefs and considering the statutory framework of ORCA § 926.021, the Court concludes that the statute is indeed susceptible to being avoided by 11 U.S.C. § 544 because it is too broad and gives rise to a secret lien avoidable by the provisions of the Bankruptcy Code.  The Court reaches this conclusion for the reasons that follow.

First, contrary to the arguments of Champaign Landmark and the words of *In re Merchants Grain*, 93 F.3d 1347 (7th Cir. 1996), *cert. denied*, 519 U.S. 1111 (1997), a decision by the Court of Appeals for the Seventh Circuit nearly a decade ago, in which it interpreted ORCA § 926, clearly indicated that the statute itself does not confine the lien to only the grain that is at issue. Rather, ORCA § 926.021(B) provides that a "lien shall exist on *all* agricultural commodity assets

---

[1]

The decision of Judge Gerling in *In re Command Services Corp.*, 102 B.R. 905 (Bankr. N.D.N.Y. 1989), is on point.  There the Court held that "[w]hile there is merit to [the movant's] contention that a determination as to the validity, priority and extent of a lien is properly brought before a bankruptcy court within the context of an adversary proceeding, pursuant to Bankr. R. 7001(2) rather than as a contested matter pursuant to Bankr. R. 9014, courts have concluded that where the rights of the affected parties have been adequately presented so that no prejudice has arisen, form will not be elevated over substance and the matter will be allowed to proceed on the merits as originally filed." *Id.* at 908.

of an agricultural commodity handler in favor of any of the following ...." (emphasis added).  The

statutory lien that arises, and is assigned to the Director of Agriculture upon a "failure" as defined

in ORCA § 926.021(A)(2), is not limited to the agricultural commodity for which payment is not

forthcoming.  The lien extends to all that is covered by the definition of agricultural commodity

assets contained in ORCA § 926.021(A)(3), *i.e.*, all unencumbered funds, property and equity of the

Debtor.  The lien is extremely broad, almost as broad as the notion of property of the estate.[2]  For

that reason, it falls within the parameters of 11 U.S.C. § 544(a)(1), which provides in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard
> to any knowledge of the trustee or of any creditor, the rights and powers of, or may
> avoid any transfer of property of the debtor or any obligation incurred by the debtor
> that is voidable by-
>
>> (1) a creditor that extends credit to the debtor at the time of the
>> commencement of the case, and that obtains, at such time and with
>> respect to such credit, a judicial lien on all property on which a
>> creditor on a simple contract could have obtained such a judicial lien,
>> whether or not such a creditor exists; ....

11 U.S.C. § 544 (2000).  Under 11 U.S.C. § 544(a)(1), a debtor in possession (vested with the

powers of a trustee by 11 U.S.C. § 1107(a)) has the so-called "strong arm power" to cut off

unperfected security interests such as secret liens.  As observed by the Court of Appeals for the

Second Circuit, the "purpose of the 'strong arm clause' is to cut off unperfected security interests,

secret liens and undisclosed prepetition claims against the Debtor's property as of the

commencement of the case." *In re Canney*, 284 F.3d 362, 374 (2d Cir. 2002) (citation omitted); *see*

*also In re Reasonover*, 236 B.R. 219, 230 (Bankr. E.D. Va. 1999) ("trustee's strong-arm powers are

meant in part to avoid 'secret liens' which take away from unsecured creditors").

---

[2]

*See* 11 U.S.C. § 541 (2000).

This Court shares the concerns of the Debtor and the Committee, that were the Court to embrace the lien of the Ohio statutory scheme, it would annex to all properties, funds or equity of the Debtor otherwise unencumbered or within the definition of ORCA § 926.021(A)(3), and would be a secret lien that would be detrimental to the interests of other creditors. Simply put, creditors would have no idea whether monies that were given to them prepetition, or monies held by the Debtor at this time, were encumbered by reason of the wide reaching lien arising from ORCA § 926.021(B).

As such, the Court believes that it is too broad a lien created by the statute. Notwithstanding the argument of Champaign Landmark or the words of the Seventh Circuit in *Merchants Grain*, the statutory language as drafted provides that the lien is not limited to the grain at issue. *Merchants Grain* concerned an action under 11 U.S.C. § 547(b) by a Chapter 11 trustee to recover payments made to depositors in the 90-day period preceding the petition date on account of the sales of grain by the debtor, which operated an Ohio grain storage and marketing facility. The trustee's argument for the recovery of the alleged preferences was that the statutory lien arising by operation of the Ohio statute was avoidable pursuant to 11 U.S.C. §§ 545(1) and (2), and that if the payments were made on account of a voidable lien, then those funds should be recoverable by the estate. The critical issue before the court, insofar as determining whether the statutory lien was avoidable, was the point at which the lien attached. Whether the lien attached was not at issue in that case and the Seventh Circuit did not have to decide whether the statute was overbroad. Consequently, this Court believes that the Seventh Circuit limited its comments and was not required to focus upon its statements when making such statements along the lines that the lien created by

ORCA § 926.021 attached to the grain.  Those comments are replete throughout the case, and the

Court believes it was because the issue did not arise to focus the court's attention upon the fact that

the lien does more than attach to the grain deposits, but rather, attaches to all of the property defined

in ORCA § 926.021(A)(3) as agricultural commodity assets.

For these reasons, this Court does not believe that the *Merchants Grain* case is on

point, nor one that applies to the case at hand where the argument is that the lien attaches to property

above and beyond the bushels of grain that traveled from Ohio to other places by reason of the

business done between the Debtor and Champaign Landmark.  To the extent that the statutory

scheme of Ohio applies, the Court believes that it is, by its terms, far too broad.  By its breadth, the

statutory lien is akin to a secret lien, giving a priority secured claim in derogation of the rights of

other creditors and in violation of the very statutory scheme sought to be enforced by this Court by

reason of the Bankruptcy Code.  Were the Court to permit the Ohio statutory lien to arise and attach

to all the assets to which it believes it may attach, it would disrupt the equitable distribution scheme

envisioned by Congress in the Bankruptcy Code, and for that reason, the Court believes that

Congress has given debtors in possession, as well as a trustee, the necessary  power to avoid such

a situation and to avoid such a secret lien.

**THE PRINCIPLES OF COMITY & EXTRATERRITORIAL LIENS**

As an alternative holding, even assuming that ORCA § 926.021 applies and the Court

did not find the lien created by Ohio law was avoidable, the Court agrees with the Creditors'

Committee that the principles of extraterritoriality prohibit the enforcement of the lien beyond the

boundary of the State of Ohio.  There are several cases of particular interest to this Court relevant

to this issue.  The first is *Chicago Title & Trust Co. v. Fox Theatres Corp.,* 105 F.2d 147 (2d Cir.

1939) (relying on *J.T. Fargason Co. v. Furst,* 287 F. 306 (8ᵗʰ Cir. 1923), and *Driver v. J.T. Fargason*

*Co.,* 288 F. 671 (8ᵗʰ Cir. 1923)), where the Second Circuit rejected the notion that a local statute

could impose a lien on property wherever located.  A lien created by state statute, based upon this

caselaw, has no extraterritorial force.  Rather, as the Supreme Court has held, the "priority of the

state extends to all property of the Debtor within its borders."  *Marshall v. New York*, 254 U.S. 380,

385 (1920).  The Court believes that by reason of the doctrine of extraterritoriality, it must be

concluded that the Ohio statute cannot reach beyond the borders of the State of Ohio and thus is

inoperative with respect to the property of the Debtor outside of Ohio.  The parties concede that

there are no assets of the Debtor within the State of Ohio, and even if the lien were held to be valid,

there is no property within the state to which the lien would attach.

Champaign Landmark argues that even if the Court were to adopt the view that a

statute of a state has no extraterritorial effect, it should nonetheless give the statute comity, as was

done in *In re Eddingfield*, 67 B.R. 1000 (Bankr. C.D. Ill. 1986).  In that case, the court recognized

the doctrine of extraterritoriality, but also indicated that by virtue of the doctrine of comity, a court

of one state may give effect to a lien granted by the laws of another state.  After considering the

issues as to whether comity should be given, the *Eddingfield* court concluded that the affected party

had not asserted any injury to its interest which would cause the court to find that comity should not

be observed, and thus granted the non-domicile state's statutory lien priority.  That is not the case

here.  Indeed, the Debtor, the Creditors' Committee and others have risen to assert that were this

Court to give comity to the Ohio statutory lien, injury would result to the affected parties, namely, the creditors and Debtor in this bankruptcy proceeding. Moreover, the entire priority and distribution scheme of the Bankruptcy Code would be disrupted if this Court granted comity to the Ohio lien. For these reasons, the Court believes that granting comity to the Ohio statute is not appropriate.

**CONTRACTUAL CHOICE OF LAW**

As a further alternative ruling, this Court finds that New York law, and not Ohio law, governs the relationship of the parties here. The Debtor urges that Champaign Landmark chose, by virtue of the choice of law provision of the contract, to have its contract interpreted and enforced in accordance with the laws of the State of New York without regard to principles of conflict of laws.[3] Champaign Landmark urges that the lien is held by the State of Ohio and that because the state was not a signatory to the contract, it therefore is not bound by the contractual choice of law agreed to by Champaign Landmark with the Debtor. The Court disagrees.

The Court believes, as the Debtor rightly points out, that the lien is held by a "claimant." The claimant in this instance is Champaign Landmark. Subsection (D) of ORCA § 926.021 grants to the Director of Agriculture the exclusive authority to *enforce* the lien claims, but does not grant the Director of Agriculture the lien. Rather, as provided by ORCA § 926.021(C), and notwithstanding the enforcement authority vested in the Director of Agriculture, the lien that

---

3

*See* Debtor's Memorandum in Opposition of the Motion, Exhibit A, ¶ 14 (a copy of the contract entered into by the Debtor and Champaign Landmark).

arises is held by the claimant.  Here, Champaign Landmark, voluntarily and without dispute, entered

into a contract with the Debtor under which it agreed that the laws of the State of New York would

govern.  Champaign Landmark argues that notwithstanding the contractual choice of law, the Ohio

law in the statutory scheme nonetheless arises and applies.  As the Debtor points out, however, Ohio

law permits its residents to, in effect, give away or contract away the protection of its state of

domicile.  More specifically, ORCA § 1301.05, entitled "Territorial Application of the Act; Parties'

Power to Choose Applicable Law" states in pertinent part:

(A)     Except as otherwise provided in this section, when a transaction bears a
        reasonable relation to this state and also to another state or nation, the parties
        may agree that the law either of this state or of the other state or nation shall
        govern their rights and duties.  In the absence of an agreement of that nature,
        Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310.
        of the Revised Code apply to transactions bearing an appropriate relation to
        this state.

The Court agrees with the Debtor that New York law – indeed, this state and the transaction that is

at issue – bears as reasonable a relation to the State of New York as it does to the State of Ohio.

Thus Champaign Landmark, pursuant to or in accordance with ORCA § 1301.05, had the right to

agree that the law of another state would apply.  The Court is prepared to find that Champaign

Landmark had the right to choose to have the laws of another state apply to its business dealings.

That is what it did by having voluntarily entered into a contract prepared by the Debtor in New York

that provided for the applicability of New York law.  Having so agreed, Champaign Landmark

voluntarily waived the protection that might have been afforded to it by ORCA § 926.021.  Even if

the lien was not avoidable, the Court believes that the statutory scheme of Ohio does not arise to the

benefit of Champaign Landmark because of the voluntary agreement by Champaign Landmark to

have New York law apply and be looked to when the contract is being enforced.

## CONCLUSION

For the foregoing reasons, the motion for relief from the automatic stay by Champaign Landmark is DENIED.

The Court will separately enter an Order consistent with this Decision.


Dated:          Central Islip, New York
                November 20, 2006


                                            */s/ Melanie L. Cyganowski*
                                  Hon. Melanie L. Cyganowski, U.S.B.J.