UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

R.F. CUNNINGHAM & CO., INC.

                       Debtor.

-----------------------------------------------------------------x

Case No. 805-84105-511

Chapter 11

## MEMORANDUM DECISION
### (Re: Stockland Grain Motion for Allowance of Administrative Claim in Lieu of Reclamation)

APPEARANCES:

*Counsel for Stockland Grain Company*
Michael J. Cohen, Esq.
Bainton McCarthy LLC
26 Broadway, Suite 2400
New York, New York 10004

David C. Barrett, Jr.
Barrett, Easterday, Cunningham & Eselgroth LLP
7269 Sawmill Road, Suite 100
Dublin, Ohio 43016

*Counsel for the Debtor*
Michael S. Amato, Esq.
Ruskin Moscou Faltisckek PC
East Tower, 15th Floor
1425 EAB Plaza
Uniondale, NY 11556--1425

HON. MELANIE L. CYGANOWSKI, United States Chief Bankruptcy Judge:

Before the Court is the motion of Stockland Grain Company ("Stockland") seeking allowance of an administrative claim in lieu of reclamation pursuant to 11 U.S.C. §§ 502(b) and 546(c), which the Debtor opposes. Familiarity with the prior proceedings is assumed. The factual recitation that follows is without material dispute.

Stockland shipped corn to the Debtor, a grain broker and merchant, on three occasions: April 27, 2005; May 18, 2005; and May 31, 2005. The delivery terms were "F.O.B. Milford, Illinois" in rail equipment provided by the Debtor. The corn was shipped to parties in Alabama, Georgia and Florida (the "Purchasers") who had purchased the corn from the Debtor. The total value of the corn that is the subject of Stockland's motion is $56,178.64.[1]

The Purchasers received the corn between June 10 and 15, 2005. During this time, *i.e.,* on June 13, 2005, the Debtor filed its bankruptcy petition. For the most part, the Debtor has described its reorganization strategy as being that of a "liquidating Chapter 11." On June 14, 2005, after learning the Debtor was insolvent, Stockland faxed and emailed the Debtor a demand for reclamation of the corn. Stockland followed up with a phone call the next day, and a supplemental fax and email demanding reclamation on June 17, 2005. The shipments of corn were never returned or reclaimed.

---

[1] Stockland filed a proof of claim in the amount of $217,455.38. By this motion, Stockland is asking that $56,178.64 of its claim be treated as an administrative claim.

Stockland's asserted right of reclamation arises from Uniform Commercial Code § 2-702.[2] Section 546(c)[3] of the Bankruptcy Code (11 U.S.C. § 101, *et. seq.*)[4] was enacted to clarify

---

[2]

Illinois, Stockland's home state, and New York, the Debtor's home state, have adopted identical versions of the relevant Uniform Commercial Code provisions, and references hereafter will be to the "U.C.C." U.C.C. § 2-702 states:

(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (Section 2-705).

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2-403). Successful reclamation of goods excludes all other remedies with respect to them.

[3]

Section 546(c) provides:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but--

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods--

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court--

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

the application of U.C.C. § 2-702 in bankruptcy, and requires the seller to make a written demand for reclamation before ten days after an insolvent debtor's receipt of goods.  *See* 5 Collier on Bankruptcy ¶ 546.04 and 546.LH[3] (15th ed. Rev. 2005).  Section 546(c) is not the source of a right of reclamation, but allows a seller to exercise a right of reclamation existing under non-bankruptcy law, subject to certain limitations.  *In re Dairy Mart Convenience Stores, Inc.*, 302 B.R. 128, 132-33 (Bankr. S.D.N.Y. 2003)(citations omitted).

The parties have focused on the date Stockland delivered the goods to the common carrier, the date the goods were delivered to the Purchasers, and the F.O.B. shipment terms.  The focus on those matters is misplaced.  The remedies of the U.C.C. do not depend on the passage of title.  *See* U.C.C. § 2-401 Preamble, which provides, in pertinent part that "[e]ach provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title."[5]  "F.O.B." means "free on board" and is a delivery term that delineates the respective responsibilities of sellers and buyers of goods.  U.C.C. § 2-319.  When the terms of a contract are "F.O.B." place of shipment, a seller must ship goods in the manner provided by the U.C.C. and bear

---

[4] References to the Bankruptcy Code are to the Code as it was in effect prior to October 17, 2005.

[5] In addition, Official Comment 1 to U.C.C. § 2-401 states, "This Article deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not "title" to the goods has passed."  In short, reclamation as a remedy under U.C.C. § 2-702 does not turn on passage of title.

the expense and risk of putting goods into possession of the carrier. *A. M. Knitwear Corp. v. All America Export-Import Corp.*, 359 N.E.2d 342, 345 (N.Y. 1976).

The focus of the Bankruptcy Code is upon the "receipt" of goods, and not "delivery." "Receipt" is defined as taking physical possession of goods. U.C.C. § 2-103(1)(c).[6] Delivery to a common carrier does not constitute "receipt" by a buyer of goods. *See, e.g., Aventura Sportswear, Ltd. v. Maloney Enter. (In re Maloney Enter.)*, 37 B.R. 290, 292 (Bankr. E.D. Ky. 1983).

In *Montello Oil Corp. v. Marin Motor Oil, Inc. (In re Marin Motor Oil, Inc.)*, 740 F.2d 220 (3d Cir. 1984), the Court held that receipt, within the meaning of 11 U.S.C. § 546(c), occurred when the buyer's bailee took actual physical possession of the goods from the common carrier. The Court also concluded, however, that before receipt, while goods are yet in the possession of a common carrier, a seller's remedy upon discovery of a buyer's insolvency is to stop delivery pursuant to U.C.C. § 2-705.[7] Once the goods are received by the buyer, or there is

---

[6]

*See also* Official Comment 2, U.C.C. § 2-103 ("'Receipt' must be distinguished from delivery particularly in regard to the problems arising out of shipment of goods, whether or not the contract calls for making delivery by way of documents of title, since the seller may frequently fulfill his obligations to "deliver" even though the buyer may never "receive" the goods").

[7]

U.C.C. § 2-705 states:

Seller's Stoppage of Delivery in Transit or Otherwise. (1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (Section 2-702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.
(2) As against such buyer the seller may stop delivery until (a) receipt of the goods by the buyer; or (b) acknowledgment to the buyer by any bailee of the goods except a carrier that

constructive possession by the buyer under U.C.C. § 2-705(2), the right to stop delivery ends, and the right to reclaim arises. In this regard, these rights appear complementary. *Marin Motor Oil*, 740 F.2d at 225-26; *Maloney Enter.*, 37 B.R. at 292-94.[8]

In the case here before this Court, the Debtor never had actual, physical or constructive possession of the corn. Delivery was made directly to the Purchasers, who were not bailees of the Debtor. Even if the Purchasers were bailees, the parties have not pointed to anything in the record showing satisfaction of a constructive possession provision of U.C.C. § 2-705(2), or attornment to the Debtor by the Purchasers as contemplated by Official Comment 1 to U.C.C. § 2-702. The time for a reclamation demand did not begin to run when the goods were delivered to the carrier in Milford, Illinois, nor when delivery was made to the Purchasers.

---

the bailee holds the goods for the buyer; or (c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or (d) negotiation to the buyer of any negotiable document of title covering the goods.
(3)(a) To stop delivery the seller must so notify as to enable the bailee by reasonable diligence to prevent delivery of the goods. (b) After such notification the bailee must hold and deliver the goods according to the directions of the seller but the seller is liable to the bailee for any ensuing charges or damages. (c) If a negotiable document of title has been issued for goods the bailee is not obliged to obey a notification to stop until surrender of the document. (d) A carrier who has issued a non-negotiable bill of lading is not obliged to obey a notification to stop received from a person other than the consignor.

[8] *See also* Official Comment 1 to U.C.C. § 2 - 702. ("The seller's right to withhold the goods or to stop delivery except for cash when he discovers the buyer's insolvency is made explicit in subsection (1) regardless of the passage of title, and the concept of stoppage has been extended to include goods in the possession of any bailee who has not yet attorned to the buyer."). It appears that even when there has been delivery to a bailee, the right to stop delivery may not have expired and the right of reclamation may not have become effective.

Moreover, going beyond the issue of receipt, this Court recognizes that Stockland bears the burden of showing that the Debtor had possession of the goods when the reclamation demands were received. *Flav-O-Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1347 (11th Cir. 1988); *In re New York Wholesale Distribs. Corp.*, 58 B.R. 497, 500 (Bankr. S.D.N.Y. 1986); *Allstate Fabricators, Inc. v. Flagstaff Foodservice Corp. ( In re Flagstaff Foodservice Corp.)*, 56 B.R. 899, 908 n. 7 (Bankr. S.D.N.Y. 1986); *In re Victory Markets, Inc.*, 212 B.R. 738, 741 (Bankr. N.D.N.Y. 1997).  The record contains no evidence that the Debtor possessed the goods on June 14 or 17, 2005, when the written reclamation demands were made. "Possession necessarily is part of the *prima facie* case which the seller must present in a § 546(c) reclamation action. The seller therefore bears the burden of producing some evidence of possession when it presents its case-in-chief." *Flav-O-Rich*, 846 F.2d at 1348.

The Court also notes that a seller's rights under U.C.C. § 2-702 to reclaim goods merely gives the right to make such a claim, and does grant any right to repossess.  *In re Waccamaw's Homeplace*, 298 B.R. 233, 238 (Bankr. D. Del. 2003).  The right of reclamation is not a self-effectuating remedy, and the failure to take action to protect reclamation rights can lead to loss of the right.  Id. at 239.  Stockland filed this motion August 24, 2006, over a full year after the petition was filed and the demands for reclamation were made.  Stockland has failed to diligently assert or protect any alleged right of reclamation.[9]

---

[9]

Typically, enforcement of reclamation rights requires an adversary proceeding.  Fed.R.Bankr.Pro. 7001.  Here, no adversary proceeding was ever commenced and the creditor simply moved for the requested relief.  In the interests of justice and because reclamation of the goods is impossible at this time, the Court will permit this matter to be resolved by motion and will not dismiss it for procedural infirmities.

With the filing of a petition, a creditor is limited to seeking relief from the stay to take possession of the reclamation goods. Bankruptcy Code Section 546(c) permits the Court to deny a request for such relief, and instead grant an administrative claim in an amount equal to the value of goods that could have otherwise been repossessed. *Waccamaw's Homeplace*, 298 B.R. at 239 (citation omitted). This underscores the requirement that a debtor possess the goods subject to reclamation at the time of the reclamation demand.

In order for a court to deny reclamation and award an administrative claim, there must be a valid right of reclamation. Stockland has not demonstrated a valid right of reclamation underlying the request for administrative treatment, and has offered no basis for administrative treatment under 11 U.S.C. § 503(b). Accordingly, Stockland's request is DENIED.

The Court will enter a separate Order consistent with this Memorandum Decision on this same date.

Dated:     Central Islip, New York
           December 21, 2006

                                        */s/ Melanie L. Cyganowski*
                                        Hon. Melanie L. Cyganowski, U.S.B.J.