**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
In re:

R.F. Cunningham & Co., Inc.,                    Case No. 05-84105-JBR
                                                Chapter 11
                    Debtor.
---------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## (RE: DEBTOR'S SECOND OMNIBUS MOTION TO ASSUME
## AND/OR REJECT CERTAIN EXECUTORY CONTRACTS )

This Chapter 11 case was filed on June 13, 2005 (the "Petition Date").  By Application dated November 17, 2005 (the "Motion") (Docket # 163), the Debtor-in-possession (the "Debtor") sought to reject certain executory contracts, including 12 contracts (the "Contracts") with Panek Coatings ("Panek"), under 11 U.S.C. §365(a).  Panek objected on the grounds that it was induced by the Debtor's misrepresentations to continue with the Contracts and sought either to compel performance or receive an administrative claim on the basis that some of the Contracts only came into existence post-petition.  Chief Judge Cyganowski entered an order granting the Motion except for the Contracts and subsequently scheduled an evidentiary hearing "to permit the parties to offer evidence of the intent of the parties to be bound in the absence of a price term in the contracts with Panek that Debtor seeks to reject."

An adjourned evidentiary hearing was held on May 9, 2007 (the "Evidentiary Hearing").  Based upon the testimony of the parties and in light of the provisions of the New York Uniform Commercial Code and the customs and practices of this industry, the Court finds with respect to the post-petition priced Contracts, on the date each contract was executed by both parties (the "Contract Date"), it was the intent of the parties to enter into binding and enforceable contracts where the price would be fixed at a later date by Panek.  Accordingly, the post-petition priced

Contracts are in fact pre-petition executory contracts and as such they are not entitled to administrative priority status.  Furthermore, Panek has failed at this point in time to establish any basis for granting administrative priority status to any of its claims arising from the rejection of the Contracts.

*Facts*

The dispute centers around whether the Debtor and Panek intended the Contracts to be binding contracts upon their execution or when they were priced.  The Contracts, pursuant to which the Debtor was to take delivery of corn and soybeans from Panek sometime between January and April 2006, were negotiated pre-petition.  The Contracts did not set the price for the goods but provided for Panek to fix the price in the future, subject to certain parameters set forth in the Contracts.[1]  The Purchase Confirmation forms confirming the terms of the Contracts were executed pre-petition and include the following express terms: (i) date of the contract, (ii) location it was initiated, (iii) name of the trader, (iv) quantity of the commodity, (v) basis price to establish the final pricing of the contract, (vi) delivery method, (vii) payment terms, (viii) destination of commodities, (ix) governing law, and (x) shipping period. Four of the Contracts were priced by Panek pre-petition (the "Pre-Petition Priced Contracts").  The remaining eight were priced by Panek post-petition (the "Post-Petition Priced Contracts").  As noted, the final price of the contract which was intentionally left blank by the parties to be set by Panek at the appropriate time of its choosing utilizing the Chicago Bond of Trade Price and the basis set forth in the specific Contract.

Since the filing of the Motion, Panek has mitigated damages be selling some of the

---

[1] Unpriced contracts are also referred to in the industry as "basis contracts."

commodities and now claims that it has damages of $120,242.31 for the corn contracts and $109,525.00 for the soybean contracts.

*Discussion*

Section 14 of the Purchase Confirmation for each of the Contracts provides that "[t]he contract will be interpreted under, and enforced in accordance with the laws of the State of New York, without regard to the principles of conflicts of laws." Thus, New York law should be applied to interpretation of these agreements. N.Y. UCC § 2-305 provides in pertinent part:

> (1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if
>
> > (a) nothing is said as to price;
> > (b) the price is left to be agreed by the parties and they fail to agree; or
> > (c) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.
>
> (2) A price to be fixed by the seller or by the buyer means a price for him to fix in good faith.
>
> (3) When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other may at his option treat the contract as cancelled or himself fix a reasonable price.
>
> (4) Where, however, the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract. In such a case the buyer must return any goods already received or if unable to do so must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account.

Even though there are instances where parties agree to be bound to a contract that leaves open material term, "there must be sufficient evidence that both parties intended that arrangement." *Express Industries and Terminal Corp. v. New York State Department of Transportation*, 93

N.Y.2d 584, 590 (1999). Therefore, the failure to specify the price term of the contracts is not fatal to the formation of these contracts if the debtor and Panek intended to by bound by the Contracts upon their execution and before each Contract was priced.

Section 1 of each Purchase Confirmation under the heading "Trade Rules Applicable" provides that "[e]xcept as otherwise provided herein, the Trade Rules of the National Grain and Feed Association ("NGFA") apply to the contract." NGFA Grain Trade Rules, Rule 9[2] under the heading "Unpriced Contracts" states, "[u]nless otherwise agreed, all unpriced contracts shall be priced with the day's price range at Buyer's option, while futures markets are open and tradable. In no case shall pricing go beyond the requested date of shipment, the date of actual shipment, or the day before the first notice day of the contract futures month involved, whichever comes first." Thus, the terms of the Contract dictate how a price would be fixed in the event Panek chose not to price the contracts.

Panek claims that it could essentially walk away from its agreements with the Debtor by not fixing the price. Panek asserts that NGFA Grain Trade Rule 9[3] which deals with unpriced contracts is inapplicable to these contracts as it only relates to contracts unpriced by the buyer. However, the second sentence of NGFA Grain Trade Rule 9 (describing how unpriced contracts should be priced in the absence of an election by the party with the power to do so) clearly

---

[2] Given the existence of NGFA Grain Trade Rule 9, it is evident that the custom and practice of this industry is for unpriced contracts to be entered into where the price is fixed at a future date either by buyer or seller.

[3] NGFA Grain Trade Rule 9 states, "[u]nless otherwise agreed, all unpriced contracts shall be priced within the day's price range at Buyer's option, while futures markets are open and tradable. In no case shall pricing go beyond the requested date of shipment, the date of actual shipment, or the day before the first notice day of the contract futures month involved, whichever comes first."

applies to all unpriced agreements, not just those unpriced by the buyer. The presence of such a provision indicates that the parties intended to be bound by the Contract; they agreed in advance to an alternative pricing method should Panek fail to price its produce.

The testimony of the parties further leads the Court to conclude that the parties intended, upon execution, to have binding contracts. Daniel Ladigoski,[4] the Debtor's President and CEO, testified at the Evidentiary Hearing that the parties were bound to each of the Contracts with Panek at the time of execution of the Purchase Conformation regardless of the fact that the date the price was to be fixed by Panek had not been selected. James Panek's testimony did not contradict Ladigoski's testimony on the issue of when these contracts became binding and enforceable.

Panek's interpretation that unpriced commodities contracts are not binding until priced flies in the face of the terms of the agreements. Moreover, to view these arrangements as non-enforceable until a seller decides if it will ever price the commodity, would put this industry into turmoil[5] as a buyer would have no confidence that a seller would ever perform. Clearly that is not the parties' intentions.

Based upon the pleadings and the testimony at the Evidentiary Hearing the Court finds that upon execution of both parties, the parties intended to conclude a contract of sale without a price term within the meaning of N.Y. UCC § 2-305(1), with price to be determined later by the seller (Panek). Accordingly, all of the Contracts, including the Post-Petition Priced Contracts,

---

[4]The Court gives great weight to the testimony of Mr. Ladigoski given his forty years of experience purchasing commodities.

[5]The industry's concern regarding the effect of unpriced contracts undoubtedly led to the promulgation of NGFA Grain Trade Rule 9.

are pre-petition contracts that the Debtor may reject and which, on this basis, give rise only to pre-petition damages, that, based on the record presently before the Court, are not entitled to administrative priority under 11 U.S.C. § 503(b)(1)(A).

The Court also finds that there is not sufficient credible evidence at this time to support Panek's allegations that it was induced by certain misrepresentations to honor its contracts with the Debtor and that under Panek's theory, that administrative priority status is warranted. The Court recognizes that Judge Cyganowski's November 6, 2006 Order limited the scope of the Evidentiary Hearing, and Panek may have not presented all of its evidence in support of its claims that there were post-petition misrepresentations by the Debtor or that post-petition consideration was given. The Court notes, however, that there was some testimony regarding alleged misrepresentations given at the Evidentiary Hearing. Panek may present additional evidence on the misrepresentation and/or administrative priority of claims either by affidavit at the hearing to be held on June 11, 2007 or at a future hearing if necessary. Similarly, the Debtor is free to respond to these claims.

### *Conclusion*

For the reasons set forth herein, the Court concludes that the Contracts are in fact all pre-

petition executory contracts not entitled, at this time, to administrative priority under 11 U.S.C. § 503(b)(1)(A).

So Ordered.

Dated: Central Islip, New York
      June 8, 2007                                    *s/Joel B. Rosenthal*
                                                   Hon. Joel B. Rosenthal
                                                   United States Bankruptcy Judge